UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DANNY McCADNEY                                             CIVIL ACTION

VERSUS                                                     NO. 13-824-JWD-RLB

LOUIS HAMILTON

## NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

    **ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on April 14, 2015.

                                  **RICHARD L. BOURGEOIS, JR.**
                                  **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DANNY McCADNEY                                            CIVIL ACTION

VERSUS                                                       NO. 13-824-JWD-RLB

LOUIS HAMILTON

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment on the Issue of Liability (R. Doc. 31) and Defendant's Motion for Summary Judgment (R. Doc. 35). The parties have filed oppositions to the respective motions. (R. Docs. 34, 41).[1] For the following reasons, the Court should deny both of these motions.

I. **Background and Procedural History**

Danny McCadney ("Plaintiff") is an inmate at Elayn Hunt Correctional Center in St. Gabriel, Louisiana. He alleges that on July 15, 2013 he was subjected to cruel and unusual punishment at the hands of a Louisiana Department of Public Safety & Corrections ("DOC") correctional officer, Sgt. Louis Hamilton ("Defendant"). Plaintiff alleges that as Defendant escorted Plaintiff's cell mate back into the cell after using the phone, Plaintiff, who was confined in restraints, attempted to exit the cell to use the phone himself. (R. Doc. 1 at 2). He then alleges that Defendant "kicked the door closed and the cell door struck [Plaintiff] on his left shoulder and slammed his head between the door and door frame rendering [him] unconscious." (R. Doc. 1 at 2). Plaintiff alleges that the "use of force was unnecessary and excessive" and "it was not objectively reasonable to use force on an inmate who was restrained and not resisting." (R. Doc. 1 at 4-5). Plaintiff brings a claim under 42 USC § 1983 for violation of his "Eighth Amendment

---

[1] Plaintiff has also submitted his opposition to Defendant's motion for summary judgment (R. Doc. 41) as a reply in support of Plaintiff's motion for partial summary judgment. (R. Doc. 46).

Right to be free from cruel and unusual punishment." (R. Doc. 1, ¶ 25).[2] Plaintiff also alleges a state law negligence claim. (R. Doc. 1 at 6).

On November 21, 2014, Plaintiff moved for partial summary judgment on the issue of liability. (R. Doc. 31). Plaintiff relies upon his verified complaint (R. Docs. 1, 31-11); his Statement of Undisputed Facts (R. Doc. 31-2); affidavits, declarations, and other statements from other inmates (R. Docs. 31-4 to 31-9); and Defendant's deposition testimony (R. Doc. 31-10). Plaintiff argues that there are no genuine issues of material fact regarding whether Defendant caused his injuries with "callous indifference" in violation of the Eighth Amendment, and, accordingly, the only issue that should remain for trial is the amount of recoverable damages.

On December 8, 2014, Defendant moved for summary judgment on the basis that he is entitled to qualified immunity, Plaintiff's alleged failure to exhaust his administrative remedies prior to bringing suit, and Plaintiff's alleged failure to allege sufficient facts supporting the use of excessive force. (R. Doc. 35). Defendant relies upon the pleadings; his Statement of Undisputed Facts (R. Doc. 35-2); his affidavit (R. Doc. 35-3); the affidavits of other DOC employees (R. Doc. 35-4, 35-5, 35-6, 35-9, 35-10, 35-11); phone records (R. Doc. 35-7); Plaintiff's deposition transcript (R. Doc. 35-8); Defendant's interrogatory responses (R. Doc. 35-12); a photograph of Plaintiff's cell (R. Doc. 35-13); and the administrative proceedings records (R. Doc. 35-14). Defendant seeks dismissal of the action in its entirety.

---

[2] Plaintiff also alleges that Defendant violated his Fourth Amendment rights. (R. Doc. 1 at 4-5). In the context of denying Defendant's motion to dismiss, the Court concluded that "there are no facts pled which support a Fourth Amendment claim." (R. Doc. 19 at 1).

## II. Law and Analysis

### A. Summary Judgment Standard

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility

of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

      B.      **Exhaustion of Administrative Remedies**

Pursuant to 42 U.S.C. § 1997e, Plaintiff was required to exhaust administrative remedies available to him at the prison prior to commencing a civil action in this Court with respect to prison conditions.[3] This provision is mandatory and applies broadly to "all inmate suits about prison life." *Porter v. Nussle,* 534 U .S. 516, 532 (2002). Further, a prisoner must exhaust administrative remedies by complying with applicable prison grievance procedures before filing a suit relative to prison conditions. *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). One of the principal purposes of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "time and opportunity to address complaints internally." *Johnson*, 385 F.3d at 516 (*quoting Porter*, 534 U.S. at 525). Further, the degree of specificity necessary in a prisoner's grievance should be evaluated in light of this purpose. *Id.*

Upon a review of the administrative grievance which Plaintiff filed relative to the claims asserted in this proceeding, the Court concludes that Defendant's exhaustion argument should be rejected. There is no dispute that the grievance at issue submitted by Plaintiff was exhausted through the second step. Defendant appears to argue, however, that the grievance did not raise the issue of excessive force with sufficient specificity to put Defendant on notice that an

---

[3] 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C.1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

excessive force claim was being asserted. (R. Doc. 11 at 11).[4] Contrary to Defendant's assertion, a review of the referenced grievance reflects that Plaintiff complained therein that Defendant used excessive force in closing the cell door upon Plaintiff without warning:

> On July 15, 2013, I Danny McCadney #129302 was exiting my assigned cell to make a phone call. Then suddenly I felt a sharp pain spread [throughout] my cranium, [and] then everything went black. When I came conscious again, Capt. Robinson, and Sgt. Hamilton was standing over me, asking me was I alright, I responded by saying no, and asked them what, and how did I get on the floor? Sgt. Hamilton then told me my head had been slammed between the cell door and the door's frame. When I attempted to get up off the floor, I began vomiting, and my vision was blurry, and also had excruciating pain in my head, neck, and back. Shortly thereafter, I declared myself [a] medical emergency.
>
> . . .
>
> Sergeant Hamilton is personally responsible for the injuries I sustained; but, ultimately, liability lies with the head Warden, Howard Price. Because the hydraulic system that open and close the cells has been inoperable since I arrived on this tier [during] the month of Feb. 2013. Also, the warning bell that signals the opening or closing of doors is inoperable. This incident could have been avoided had the hydraulic system been functioning or if Sergeant Hamilton had the tiniest bit of common courtesy by advising all offenders to clear the cell doors, when opening and closing them. Because Sgt. Hamilton kicked the door [closed] using excessive force without any warning, is the cause of my initial head injury, which in itself is a tort of negligence that is actionable under state law.
>
> . . .

(R. Doc. 35-6 at 10-11). Based upon this recitation of facts contained in Plaintiff's administrative grievance, the Court finds that Plaintiff provided adequate notice to Defendant

---

[4] Defendant bases his argument on an affidavit submitted by Susie Krol, an DOC employee who represents that she oversees the Administrative Remedy Process (ARP) when an inmate at the Hunt facility submits a prison grievance. (R. Doc. 35-6). This affidavit characterizes the grievance at issue as strictly a complaint regarding the "inoperable electronic pin box" that required Defendant to manually open and close the prison door. (R. Doc. 35-6 at 4). While Plaintiff's grievance does raise this complaint, it also contains "allegations of use of excessive force," which Ms. Krol acknowledges in her affidavit. (R. Doc. 35-6 at 4). That the DOC did not address this aspect of the grievance in the two step process does not mean that Plaintiff did not raise the issue in the first place. Similarly, the DOC's conclusions in its first and second step responses that Plaintiff's injuries were caused by a fight with another inmate and not from a closing cell door (R. Doc. 35-6 at 8-9) has no bearing on what was actually alleged in Plaintiff's grievance.

5

that he was making an "excessive force" claim against Defendant. Accordingly, Defendant's motion should be denied relative to the issue of administrative exhaustion.

### C. Qualified Immunity

Defendant asserts that he is entitled to qualified immunity in connection with Plaintiff's claim of excessive force. Specifically, Defendant asserts that Plaintiff will be unable to present evidence sufficient to establish that Defendant violated Plaintiff's Eighth Amendment rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. App'x. 398, 399 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to Plaintiff, Defendant's conduct violated Plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once Defendant pleads qualified immunity, the burden shifts to Plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas*

*Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008) (*citing Michalik v. Hermann*, 422 F.3d at 262).[5]

The Court concludes that Defendant's motion should be denied with regard to its assertion of qualified immunity. Specifically, the Court finds that Plaintiff's allegations and evidentiary showing are sufficient to create a genuine issue of material fact and to thereby overcome Defendant's assertion of qualified immunity relative to his claim of alleged excessive force.

The law is clear that a use of force is excessive and violates the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (*quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Although the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force (provided that such force is not of a sort "repugnant to the conscience of mankind"), *Hudson*, 503 U.S. at 10, an inmate who is subjected to gratuitous force by prison officials "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38. Factors to be considered in determining whether an alleged use of force has been excessive include the extent of injury sustained, if any, the need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably

---

[5] The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial," the *Callahan* Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

perceived by prison officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7.

Applying the foregoing standard, the Court concludes that there are disputed questions of fact which preclude summary judgment in connection with the issue of excessive force. Specifically, Plaintiff asserts in his verified Complaint that Defendant "kicked the door closed and the cell door struck [Plaintiff] on his left shoulder and slammed his head between the door and door frame rending [him] unconscious." (R. Doc. 1 at 2; *see also* R. Doc. 35-8 at 14-16, 19, 21). Although Plaintiff acknowledges that he was on a phone restriction, Plaintiff asserts that he began to exit the cell to use the phone to determine whether the restriction had been lifted as he had done the day before. (R. Doc. 35-8 at 9-10). Plaintiff further alleges that Defendant acted with "intent" and "callous indifference" to Plaintiff's constitutional rights when he allegedly closed the door on Plaintiff. (R. Doc. 1 at 3). Plaintiff further alleges that he is "in continuous pain" and has suffered persistent migraine headaches; a pinched nerve in his neck and back; neck and back injuries; an "electric shock sensation" in his neck; loss of feeling in his hands; blurred vision; ringing in the ears; loss of balance; sensitivity to light and noise; anxiety attacks; loss of enjoyment of life; and physical disability. (R. Doc. 1 at 3).

Plaintiff's sworn assertions that Defendant did not provide any warning prior to closing the door and suffered from injuries is corroborated by additional sworn statements attached to Plaintiff's memorandum and purportedly signed by co-inmates. (*See* R. Docs. 31-4 at 31-9). One inmate states in an affidavit that "Sgt. Louis Hamilton slammed McCadney in the door" and "he often slammed the cell doors on inmates nearly missing them as they returned to their cells." (R. Doc. 31-4 at 1). That inmate further states that Plaintiff "had headaches and vision problems after he was slammed in the door." (R. Doc. 31-4 at 1). Another inmate provided that he saw

8

Defendant push the door closed with his feet, hit Plaintiff with the door as he was exiting the cell, and then looked "for a second and walked off." (R. Doc. 31-9 at 2). Other inmates from neighboring cells state that they did not hear Defendant give any warning (R. Docs. 31-7 at 1, 31-8 at 2). One recalled hearing "a loud thud" and the medics subsequently attending to Plaintiff (R. Doc. 31-7 at 1). Other inmates offered that on other occasions Defendant would not give warning when he manually closed the cell door. (R. Docs. 31-5, 31-6).

Defendant denies that he "kicked the door closed" and that the cell door struck Plaintiff "on his left shoulder and slammed his head between the door and the door frame rending [Plaintiff] unconscious." (R. Doc. 34-1 at 2). Defendant represents under oath that he loudly announced "Cell door closing" as he was "manually pushing the door [closed]." (R. Doc. 34-3 at 2).[6] Defendant further represents under oath that he at no time "felt the door bump or hit anything" and did not see Plaintiff's head in the doorway as he was closing the door. (R. Doc. 34-3 at 3). Defendant claims that Plaintiff was sitting on his foot locker in the cell at the time he closed the door and then exclaimed: "Ouch you hit me with the door." (R. Doc. 34-3 at 3). Defendant states that he did not "commit any intentional act of excessive force" against Plaintiff and claims that Plaintiff's injuries were related to earlier fistfights with another inmate. (R. Doc. 34-1 at 2).

Defendant presents several affidavits by other DOC employees. While Defendant provides evidence that Plaintiff was on a telephone restriction (R. Doc. 35-7), Defendant admits that Plaintiff tried to use the phone the day before (R. Doc. 35-1 at 2). The affidavit submitted by Captain Robinson provides that he arrived at Plaintiff's cell after the incident and spoke with Defendant, who informed him that Plaintiff "alleged that he was struck on the left side of the

---

[6] Defendant later represents that he closed the door by using a piece of iron as a crank placed on top of the cell bars. (R. Doc. 34-3 at 3).

9

head while [Defendant] was manually closing the door," that Plaintiff was assessed by EMS MSgt. Elizabeth Gautreaux, and that Plaintiff was then transported to the ATU for further assessment. (R. Doc. 35-11 at 2). The affidavit is silent with regard to whether Captain Robinson noted that Plaintiff had injuries consistent with his allegations, or whether he had vomited. The affidavit of MSgt. Gautreaux provides that when she arrived at Plaintiff's cell, Plaintiff was alert and not unconscious, Plaintiff had a headache, felt nauseated, and had "a minor bruising bump on the right side of his head with no bleeding." (R. Doc. 35-4 at 2). The affidavit of Captain Craig White provides that Plaintiff was in a fight on June 28, 2013 (two weeks prior to the incident) with no reported injuries noted by Captain White and a fight on July 21, 2013 (a week after the incident) with reported injuries to Plaintiff's left eye and mouth. (R. Doc. 35-5).

The competing assertions of the parties regarding whether Plaintiff was exiting the door under the presumption he could attempt to make another call to see whether his restriction was lifted; whether Defendant intentionally closed the door on Plaintiff; the method by which Defendant closed the door; the degree of force used by Defendant in closing the door; Plaintiff's location at the time Defendant closed the door; whether Defendant intended that the door contact Plaintiff and cause injury; and the source and extent of Plaintiff's injuries, present issues of fact and credibility which are not susceptible of resolution on summary judgment. To the extent Defendant asserts that the minimal nature of Plaintiff's reported injuries as justification for the grant of summary judgment, the law is clear that minimal injuries alone do not justify dismissal. *See Wilkins*, 559 U.S. at 38; *see also Comeaux v. Sutton*, 496 Fed. App'x. 368, 371 (5th Cir. 2012) (noting that plaintiff's minimal injuries, described as "a bruised lip" and "two superficial scrapes," did not relieve defendants of liability for excessive force); *Brown v. Jones,* 471 Fed.

10

App'x. 420 (5th Cir. 2012) (finding that plaintiff's claim of injury, resulting from being allegedly struck in the groin, was sufficient to overcome defendants' motion for summary judgment). This is particularly true where, as here, accepting Plaintiff's sworn version of events as true, Plaintiff was exiting his cell to be escorted to the phone by Defendant, and, therefore, there was no justification for the use of force against him. *See Baldwin v. Stalder,* 137 F.3d 836, 840 (5th Cir. 1998) ("Needless to say, '[t]he amount of force that is constitutionally permissible . . . must be judged by the context in which that force is deployed' "); *Chambers v. Johnson,* 372 Fed. App'x. 471 (5th Cir. 2010) (recognizing that if, as plaintiff asserted, he complied with the orders of security officers, "then the defendants could not have reasonably perceived any threat requiring a need to use force"); *Peterson v. Peshoff,* 216 F.3d 1079 (5th Cir. 2000) (finding that an inmate plaintiff's claim "that correctional officers used excessive force by wantonly and maliciously spraying him with mace without provocation while he was confined in his cell" was not frivolous).

If the facts as alleged by Plaintiff are true, Plaintiff has demonstrated that there remain genuine issues of material fact regarding the reasonableness of Defendant's conduct. Accordingly, Defendant's motion should be denied on the basis of qualified immunity.

### D. Liability for Use of Excessive Force

For the same reasons provided above, Plaintiff's motion for summary judgment on the issue of liability (and Defendant's motion for summary judgment to the extent it seeks dismissal on the basis that Plaintiff cannot prove liability) must be denied. Simply stated, there are genuine issues of material fact regarding whether Plaintiff was properly attempting to exit the cell to attempt a phone call; whether Defendant realized that Plaintiff was attempting to exit the cell; whether Defendant called out a warning before closing the cell door; whether Defendant

11

acted maliciously and sadistically; and whether Plaintiff's injuries are in whole or in part attributable to Defendant's actions.

Plaintiff has not established that all genuine issues of material fact have been resolved in his favor on the issue of ultimate liability. The competing assertions of the parties present issues of credibility which are not susceptible of resolution on summary judgment. Neither party has demonstrated that he is entitled to summary judgment as a matter of law. Accordingly, the Court should therefore deny the parties' motions relative to the issue of liability.

**III.    Recommendation**

It is recommended that Plaintiff's Motion for Partial Summary Judgment on the Issue of Liability (R. Doc. 31) and Defendant's Motion for Summary Judgment (R. Doc. 35) be denied.

Signed in Baton Rouge, Louisiana, on April 14, 2015.

    **RICHARD L. BOURGEOIS, JR.**
    **UNITED STATES MAGISTRATE JUDGE**